## Snyder et al. v. Liberty Circle No. 23 of the Brotherhood of America et al.

*Unincorporated beneficial societies—Designation of beneficiary—Liability of local and supreme organizations—Act of May 24, 1893.*

1. Where the by-laws of an unincorporated beneficial society require a member to designate his beneficiary, and a member designates his sister, and subsequently marries but does not change the beneficiary, the benefit is payable on his death to his sister and not to his widow and child.

2. In this case, the suit was improperly brought against the local body or "Circle" to which the deceased member belonged, as this body never assumed the obligation for death benefits, but they were payable, under the rules and by-laws of the order, by the "Supreme Circle."

Act of May 24, 1893, P. L. 126, considered.

Bill in equity. Final hearing. C. P. Lancaster Co., Equity Docket No. 6, page 507.

B. F. *Davis*, for plaintiffs; J. E. *Senft* and *Frank M. Cody*, for defendants.

LANDIS, P. J., March 29, 1924.—The facts in this case are practically undisputed. Christian Snyder died in the month of October, 1918, from wounds received while serving in the United States Army in France. Before this, namely, on or about Feb. 10, 1916, he had married the plaintiff, and on Aug. 26, 1916, a child was born to them, who was named Bruce Snyder.

The Liberty Circle No. 23 is an unincorporated beneficial society; not, however, as a separate entity or organization, but as one of the subordinate circles of the secret fraternal beneficial order known as The Brotherhood of America. This order is composed of a supreme circle, incorporated under the laws of the State of Pennsylvania, of sundry state grand circles subordinate thereto in several of the states of the United States, and of sundry minor units subordinate to the grand circles of the states in which they are located or to the supreme circle in those states in which there are no grand circles. Death benefits are paid by the supreme circle to the beneficiaries of a deceased member, under its laws, but none are paid by the subordinate circle.

By section 21 of article XVI of the Supreme Laws, Order of Business and Rules of Order of the Supreme Circle, it is provided that "all members, when admitted to this fund, shall designate in the registration certificates the person or persons to whom the benefit of this fund, due at death, shall be paid, who shall, in every instance, be one or more members of his or her family, or related by blood, or who shall be dependent upon the member, or an affianced husband or wife." Section 22 declares that "a member of this fund, desiring to change beneficiary or beneficiaries, subject to these laws, must make designation upon the form provided for that purpose through the medium of the circle or home of which such person is a member."

Christian Snyder was, at the time of his death, a member in good standing of said Liberty Circle No. 23. He had been admitted to the death benefit fund. By virtue thereof, the sum of $500 became due and payable to the person legally entitled thereto. On Dec. 3, 1914, a "Death Benefit Fund Registration Certificate, Class A," was signed by him. In it appears the following: "I hereby designate Mary Snyder, sister, as my beneficiary." In accordance with this designation, the Supreme Circle, Brotherhood of America, through Liberty Circle No. 23, paid to William F. Yohe, guardian of said Mary Snyder, beneficiary, who was a minor, the said sum of $500 as death benefits. The plaintiff claims that the money should have been paid to herself and her minor son, and this is one of the questions raised by the bill.

### Conclusions of law.

Under the testimony presented in this case, it is clear that this bill cannot be maintained. The obligation for death benefits, which became payable in this case, was not assumed by Liberty Circle No. 23, Brotherhood of America, and certainly the members and officers of that organization never undertook to pay these or any other death benefits. Any member of a circle or home might become eligible to membership in the death benefit fund, but the body which was liable, if any one was, for the payment of death benefits in this case was the Supreme Circle of the Brotherhood of America. No bill of complaint such as this is can, therefore, be maintained against Liberty Circle No. 23, Brotherhood of America. Certainly, no decree could be made against William F. Yohe, guardian of Mary Snyder.

There is also another reason why the bill ought not to be sustained. The death benefit certificate, when originally issued, expressly designated Mary Snyder as the beneficiary. This was never changed. She was a sister of the decedent, and, therefore, was of his blood. Section 21 permitted him to designate in the certificate the person to whom the benefit should be paid at his death, provided it should be one or more members of his family, or related by blood, or who should be dependent upon the member, or an affianced husband or wife. He had a right to choose within these limits. It was provided in the rules that if the beneficiary should die and no other be designated, then the benefit should be paid to his widow, if any, or to her husband, if any, and if he or she should leave no widow or husband, then to his or her children in equal shares, grandchildren to take the share to which their deceased parent would be entitled if living; and if no children or their issue, then to his or her mother, if living; if no mother, then to his or her father, if living. None of these conditions arose, however, in the present case. The designated beneficiary, who was of his blood, did not die. She was living at his decease.

The learned counsel for the plaintiff appears to think that the Act of May 24, 1893, P. L. 126, governs the case. That act declares that from and after the passage of the act, "any benefit certificate or certificates now or hereafter issued by any corporation, society or voluntary association now or hereafter formed or organized and carried on for the sole benefit of its members and their beneficiaries and not for profit, when any person or persons shall have been designated by the members as his beneficiary or beneficiaries shall die prior to the death of the member without any new designation, and no provision is made by the laws of the society as to who shall take the share designated to go to such deceased beneficiary or beneficiaries, in all such cases the amount or share designated to be paid to such deceased beneficiary or beneficiaries shall be payable to the widow and children of such deceased member, if any, share and share alike. . . ." As has been already stated, the beneficiary did not die before the member; but, in addition, the laws of the society have provided who, under such circumstances, shall take the benefits, and so the act of assembly has no application.

We are of the opinion that, from any point of view, this bill cannot be sustained, and it is, therefore, dismissed, at the costs of the plaintiff.

Bill dismissed. Decree to be entered accordingly.

LANDIS, P. J., June 21, 1924.—On March 29, 1924, after final hearing, an opinion was filed by this court, containing finding of facts and conclusions of law, in which we held that, "from any point of view, this bill cannot be sustained, and it is, therefore, dismissed, at the costs of the plaintiff." Seven exceptions have been filed to the same on behalf of the plaintiff, in which it

is complained that we erred in these conclusions. We have, therefore, carefully reviewed our said findings, but are not convinced that any mistake has been committed in the results arrived at. We, therefore, dismiss the said exceptions and confirm our former decree dismissing the bill of complaint.

Exceptions overruled and bill dismissed.

From George Ross Eshleman, Lancaster, Pa.